IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

RICKY LEE CANNON,                    )
                                     )
          Plaintiff,                 )
                                     )
     v.                              )          Civil Action No.: 3:16cv382-WC
                                     )
NANCY A. BERRYHILL,                  )
Acting Commissioner of Social Security,[1]  )
                                     )
          Defendant.                 )

# MEMORANDUM OPINION

## I.    INTRODUCTION

Ricky Lee Cannon ("Plaintiff") filed applications for a period of disability and

disability insurance benefits and for supplemental security income on June 27, 2013.  The

applications were denied at the initial administrative level.  Plaintiff then requested and

received a hearing before an Administrative Law Judge ("ALJ").  Following the hearing,

the ALJ issued an unfavorable decision, and the Appeals Council denied Plaintiff's request

for review.  The ALJ's decision consequently became the final decision of the

Commissioner of Social Security ("Commissioner").[2]  *See Chester v. Bowen*, 792 F.2d 129,

---

[1]  Nancy A. Berryhill is now the Acting Commissioner of Social Security.  Pursuant to Rule 25(d)
of the Federal Rules of Civil Procedure, Nancy A. Berryhill shall be substituted for Acting
Commissioner Carolyn W. Colvin as the Defendant in this suit.  No further action needs to be
taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security
Act, 42 U.S.C. § 405(g).

[2]  Pursuant to the Social Security Independence and Program Improvements Act of 1994, Pub. L.

131 (11th Cir. 1986). The case is now before the court for review of that decision under 42 U.S.C. § 405(g). Pursuant to 28 U.S.C. § 636(c), both parties have consented to the conduct of all proceedings and entry of a final judgment by the undersigned United States Magistrate Judge. Pl.'s Consent to Jurisdiction (Doc. 9); Def.'s Consent to Jurisdiction (Doc. 10). Based on the court's review of the record and the briefs of the parties, the court AFFIRMS the decision of the Commissioner.

## II.    STANDARD OF REVIEW

Under 42 U.S.C. § 423(d)(1)(A), a person is entitled to benefits when the person is unable to

> engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. § 423(d)(1)(A).[3]

To make this determination, the Commissioner employs a five-step, sequential evaluation process. *See* 20 C.F.R. §§ 404.1520, 416.920 (2011).

> (1) Is the person presently unemployed?
> (2) Is the person's impairment severe?
> (3) Does the person's impairment meet or equal one of the specific impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1 [the Listing of Impairments]?
> (4) Is the person unable to perform his or her former occupation?

No. 103-296, 108 Stat. 1464, the functions of the Secretary of Health and Human Services with respect to Social Security matters were transferred to the Commissioner of Social Security.

[3]    A "physical or mental impairment" is one resulting from anatomical, physiological, or psychological abnormalities that are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.

(5) Is the person unable to perform any other work within the economy?
An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability. A negative answer to any question, other than step three, leads to a determination of "not disabled."

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).[4]

The burden of proof rests on a claimant through Step Four. *See Phillips v. Barnhart*, 357 F.3d 1232, 1237-39 (11th Cir. 2004). A claimant establishes a *prima facie* case of qualifying disability once they have carried the burden of proof from Step One through Step Four. At Step Five, the burden shifts to the Commissioner, who must then show there are a significant number of jobs in the national economy the claimant can perform. *Id*.

To perform the fourth and fifth steps, the ALJ must determine the claimant's Residual Functional Capacity ("RFC"). *Id*. at 1238-39. The RFC is what the claimant is still able to do despite the claimant's impairments and is based on all relevant medical and other evidence. *Id*. It may contain both exertional and nonexertional limitations. *Id*. at 1242-43. At the fifth step, the ALJ considers the claimant's RFC, age, education, and work experience to determine if there are jobs available in the national economy the claimant can perform. *Id*. at 1239. To do this, the ALJ can either use the Medical Vocational Guidelines ("grids"), *see* 20 C.F.R. pt. 404 subpt. P, app. 2, or call a vocational expert

---

[4] *McDaniel* is a supplemental security income (SSI) case. The same sequence applies to disability insurance benefits brought under Title II of the Social Security Act. Supplemental security income cases arising under Title XVI of the Social Security Act are appropriately cited as authority in Title II cases, and vice versa. *See, e.g.*, *Smith v. Comm'r of Soc. Sec.*, 486 F. App'x 874, 876 n.* (11th Cir. 2012) ("The definition of disability and the test used to determine whether a person has a disability is the same for claims seeking disability insurance benefits or supplemental security income.").

("VE"). *Id*. at 1239-40.

The grids allow the ALJ to consider factors such as age, confinement to sedentary or light work, inability to speak English, educational deficiencies, and lack of job experience. Each factor can independently limit the number of jobs realistically available to an individual. *Phillips*, 357 F.3d at 1240. Combinations of these factors yield a statutorily-required finding of "Disabled" or "Not Disabled." *Id*.

The court's review of the Commissioner's decision is a limited one. This court must find the Commissioner's decision conclusive if it is supported by substantial evidence. 42 U.S.C. § 405(g); *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997). "Substantial evidence is more than a scintilla, but less than a preponderance. It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *see also Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004) ("Even if the evidence preponderates against the Commissioner's findings, [a reviewing court] must affirm if the decision reached is supported by substantial evidence."). A reviewing court may not look only to those parts of the record which support the decision of the ALJ, but instead must view the record in its entirety and take account of evidence which detracts from the evidence relied on by the ALJ. *Hillsman v. Bowen*, 804 F.2d 1179 (11th Cir. 1986).

> [The court must] . . . scrutinize the record in its entirety to determine the reasonableness of the [Commissioner's] . . . factual findings. . . . No similar presumption of validity attaches to the [Commissioner's] . . . legal conclusions, including determination of the proper standards to be applied in evaluating claims.

*Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987).

## III.   ADMINISTRATIVE PROCEEDINGS

Plaintiff was thirty-five years old on the date of the hearing before the ALJ.  Tr. 44.

Plaintiff reached the tenth grade in high school.  Tr. 46.  Following the administrative

hearing, and employing the five-step process, the ALJ found at Step One that Plaintiff "has

not engaged in substantial gainful activity since May 11, 2009, the alleged onset date[.]"

Tr. 24.  At Step Two, the ALJ found that Plaintiff suffers from the following severe

impairments: "history of substance abuse, personality disorder, borderline intellectual

functioning, and schizoaffective disorder."  Tr. 24.  At Step Three, the ALJ found that

Plaintiff "does not have an impairment or combination of impairments that meets or

medically equals the severity of one of the listed impairments[.]"  Tr. 24-25.  Next, the ALJ

articulated Plaintiff's RFC as follows:

> the claimant has the residual functional capacity to perform a full range of
> work at all exertional levels, but would have certain nonexertional
> limitations.  Specifically, the claimant can understand and carry out simple
> instructions consistent with the performance of simple, unskilled work of a
> routine, repetitive nature.  He can perform simple, work-related decision
> making, but cannot perform any complex tasks or planning, independent
> goal-setting, or negotiation.  He can tolerate occasional interaction with
> supervisors and co-workers, but no interaction with members of the general
> public.  Preferably, he would work independently rather than as part of a
> team.  He can tolerate minor, infrequent changes within the workplace.

Tr. 26.  At Step Four, the ALJ concluded that Plaintiff "has no past relevant work[.]"  Tr.

33.  However, the ALJ next found that, given Plaintiff's RFC, and based upon the testimony

of the VE, "there are jobs that exist in significant numbers in the national economy that the

claimant can perform." Tr. 34.  The ALJ noted the following representative occupations: "Yard Worker," "Sales Route Driver-Helper," "Automatic Carwash Attendant," and "Inspector/Hand Packer."  Tr. 34.  Accordingly, at Step Five, the ALJ determined that Plaintiff "has not been under a disability . . . from May 1, 2009, through the date of this decision[.]"  Tr. 35.

## IV.   PLAINTIFF'S ARGUMENT

Plaintiff presents two issues in his "Statement of the Issues," arguing that the ALJ's decision should be reversed because (1) "the Appeals Council erroneously denied Mr. Cannon's request for review in light of the material evidence submitted thereto[,]" and (2) the ALJ "fail[ed] to resolve inconsistencies in the administrative record with actual rationale prior to issuing his unfavorable decision."  Pl.'s Br. (Doc. 12) at 3.

## V.   DISCUSSION

### A.   The Appeals Council's Denial of Review.

Plaintiff first contends that the Commissioner's decision should be reversed because the Appeals Council should not have denied his request for review of the ALJ's decision in light of additional evidence that was submitted to the Appeals Council.  The new evidence to which Plaintiff alludes "consists of education records evidencing the fact that Mr. Cannon was placed in Educably Mentally Retarded (**EMR**) classes while in school and scored a **69** on the WISC-R intelligence test on April 29, 1992."  Pl.'s Br. (Doc. 12) at

4 (emphasis in original).  Plaintiff asserts that the Appeals Council erred in denying his request for review despite this new evidence because

> there is a *reasonable possibility* that the new evidence provided would change the administrative outcome because such evidence: 1) provides objective corroboration to confirm his testimony that he received special education services; 2) provides the only evidence of intelligence testing in which the scores received support 12.05C listing level severity; and 3) directly conflicts with the examining physician's opinion in which the ALJ granted significant weight thereto.

*Id.* at 5.

The education records Plaintiff believes warranted the Appeals Council granting his request for review show that, indeed, Plaintiff was enrolled in "EMR" math, history, and language classes in the 1990-91 school year.  Tr. 278.  The records further appear to indicate that Plaintiff was enrolled in "EMR EXP. IND" and "EMR EXP. ART" the following year.  Tr. 278.  There is no indication that Plaintiff's other courses (including English, reading, and art in 1990-91 and English, science, math, history, and reading in 1991-92) were special education classes.  Likewise, there is a notation in the records that, as Plaintiff indicates, Plaintiff received a score of 69 on a WISC-R test administered on April 29, 1992.  Tr. 280.  Neither the actual test results or any document evidencing Plaintiff's score or other circumstances surrounding the test are included in the education records submitted to the Appeals Council.  In denying Plaintiff's request for review, the Appeals Council considered these educational records, as well as Plaintiff's attorney's brief to the Council addressing the purported significance of the records, but nevertheless "found

no reason under our rules to review the Administrative Law Judge's decision[.]" Tr. 1, 2, & 5.

The Eleventh Circuit Court of Appeals recently summarized circuit precedent governing the Appeals Council's review of new evidence submitted in conjunction with a request to review an ALJ's decision:

> Generally, a claimant may present new evidence at each stage of the administrative process. *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1261 (11th Cir. 2007); 20 C.F.R. § 404.900(b). If a claimant presents evidence after the ALJ's decision, the Appeals Council must consider it if it is new, material, and chronologically relevant. 20 C.F.R. § 404.970(b). New evidence must not be cumulative of other evidence in the record. *See Caulder v. Bowen*, 791 F.2d 872, 877 (11th Cir. 1986). The evidence is material if "there is a reasonable possibility that the new evidence would change the administrative outcome." *Hyde v. Bowen*, 823 F.2d 456, 459 (11th Cir. 1987). The Appeals Council must grant the petition for review if it finds that the ALJ's "action, findings, or conclusion is contrary to the weight of the evidence," including the new evidence. *Ingram*, 496 F.3d at 1261 (quotation marks omitted).
>
> . . .
>
> On appeal, "when a claimant properly presents new evidence to the Appeals Council [but the Appeals Council denies review], a reviewing court must consider whether that new evidence renders the denial of benefits erroneous." *Ingram*, 496 F.3d at 1262.

*Beavers v. Soc. Sec. Admin., Comm'r*, 601 F. App'x 818, 821-22 (11th Cir. 2015). Importantly, the Appeals Council "is not required to provide a detailed explanation of a claimant's new evidence when it denies a petition for review." *Id.* (citing *Mitchell v. Comm'r, Soc. Sec. Admin.*, 771 F.3d 780, 783-85 (11th Cir. 2014)). Unless the record provides a "basis for doubting the Appeals Council's statement that it considered" the additional evidence, the Appeals Council's summary statement that it reviewed and

considered the claimant's additional evidence is sufficient to indicate that it has satisfied its obligation to review the evidence. *Id.*

Here, as discussed above, the Appeals Council indicated that it considered "the additional evidence" submitted by Plaintiff, but that it still "found no reason . . . to review the Administrative Law Judge's decision[.]" Tr. 1, 2. Because the record does not provide a basis for doubting the Appeals Council's statement, under the authority set forth above, the undersigned must conclude that the Appeals Council sufficiently discharged its obligation to review Plaintiff's newly submitted evidence. Thus, this court must determine simply whether Plaintiff's "'new evidence renders the denial of benefits erroneous.'" *Beavers*, 601 F. App'x at 822 (quoting *Ingram*, 496 F.3d at 1262). As discussed previously, Plaintiff appears to assert that reversible error occurred in this case because the new evidence "provides objective corroboration to confirm his testimony that he received special education services," "provides the only evidence of an administration of intelligence testing in which the scores received support 12.05C listing level severity," and because it "directly conflicts with the examining physician's opinion in which the ALJ granted significant weight thereto." Pl.'s Br. (Doc. 12) at 5.[5] The court does not agree and will below set forth its reasoning.

### 1.    Records establishing receipt of special education services.

Plaintiff first argues that the Appeals Council erred in denying review because the education records submitted to the Council corroborate Plaintiff's testimony that he

---

[5]  Plaintiff's argument appears to conflate the standard governing whether the Appeals Council is

received special education services while enrolled in school. At the hearing before the ALJ, Plaintiff answered affirmatively when the ALJ asked whether he was "ever in special education classes." Tr. 59. The ALJ recounted Plaintiff's testimony in his opinion. Tr. 27 ("He had some trouble learning when he was in school and therefore was placed in special education classes."). Later, in describing Plaintiff's mental residual functional capacity, the ALJ acknowledged that Plaintiff "does have some cognitive deficits. . . . He reports to have been in special education, although his report is not corroborated by objective evidence such as school records." Tr. 31. Notwithstanding the lack of school records showing Plaintiff's special education placement, the ALJ found that Plaintiff "has a slow thought process, limited fund of information, concrete abstract thinking, and some attention and memory difficulties." Tr. 31.

Plaintiff does not explain how corroboration of his testimony that he received special education classes rendered the Appeals Council's denial of review erroneous. First,

required to review new evidence with the standard governing whether the Appeals Council erred in denying review despite the new evidence. For instance, Plaintiff argues that "there is a *reasonable possibility* that the new evidence provided would change the administrative outcome" of his disability claim. Pl.'s Br. (Doc. 12) at 5 (emphasis in original). However, as discussed in the text of this opinion, the "reasonable probability" standard governs whether the Appeals Council must consider new evidence, not whether it must grant review on the basis of the new evidence. *See Beavers, supra.* Here, as shown above, the Appeals Council unequivocally indicated that it considered the new evidence, thereby confirming that it found the evidence "new, material, and chronologically relevant." Nevertheless, despite the "reasonable possibility" that Plaintiff's new evidence would have changed the administrative outcome before the ALJ, the Appeals Council ultimately concluded that the evidence was not so compelling that the Appeals Council was required to grant review of the administrative decision. In other words, the Appeals Council necessarily determined that, despite the new evidence, the ALJ's decision was not contrary to the weight of all of the evidence in the record, including the new evidence. It is that decision that this court must review for error. *Beavers*, 601 F. App'x at 822.

while the ALJ noted the absence of corroborating records, it does not appear that the ALJ discredited or disbelieved Plaintiff's testimony about special education. Second, despite the lack of corroborating evidence about Plaintiff's special education placement, the ALJ plainly found that Plaintiff has "some cognitive deficits," as well as "a slow thought process," "limited fund of information," and "some attention and memory difficulties." Tr. 31. These deficits led the ALJ to articulate numerous nonexertional limitations to Plaintiff's RFC, including limiting him to "simple instructions consistent with the performance of simple, unskilled work of a routine, repetitive nature. He can perform simple, work-related decision-making, but cannot perform any complex tasks or planning, independent goal-setting, or negotiation." Tr. 26. Plaintiff has not shown that, given these limitations and the fact that the ALJ did not overtly dismiss his testimony about special education, definitive corroboration of such placement required the Appeals Council to review the ALJ's decision. In other words, mere placement in special education classes does not merit a finding of intellectual disability, and where, as here, the ALJ acknowledged the claimant's cognitive deficits and crafted an RFC accounting for such deficits, a claimant's submission of records before the Appeals Council showing that the claimant indeed was placed in some special education classes does not warrant a determination that the ALJ erred in his RFC determination.

### 2. Records reflecting Plaintiff's IQ score in 1992.

Plaintiff next argues that the Appeals Council should have reviewed the ALJ's decision because the education records he submitted to the Council indicate that he

received an IQ score of 69 on the WISC-R in 1992. According to Plaintiff, this score "equates to a score needed in order to meet Listing 12.05C." Pl.'s Br. (Doc. 12) at 5. Plaintiff further asserts that he meets Listing 12.05C because "the administrative record reveals [Plaintiff] continued to experience *deficits* in adaptive functioning in his adult life as he never obtained a driver's license, exhibited marginal vocabulary, and . . . had no past relevant work experience." *Id.* (emphasis in original) (footnote omitted).

Plaintiff alleged disability based on "mental problems." Tr. 81, 211, & 213. The ALJ found that Plaintiff does not meet any of the listings for mental impairments, specifically referencing listings for borderline intellectual functioning, schizoaffective disorders, personality disorder, and substance addiction disorder. Tr. 25. In seeking review of the ALJ's decision, Plaintiff did not expressly argue that the school records he submitted to the Appeals Council, considered in conjunction with the evidence already in the record, establish that he meets Listing 12.05C. Rather, Plaintiff argued that the new evidence "directly conflicts with Dr. Gam's estimate" that Plaintiff did not have "a long history of mental slowness or mental retardation." Tr. 281 (internal quotation omitted). Plaintiff concluded that, because "the ALJ assigned significant weight to Dr. Gam's medical opinions in which are in direct conflict" with the submitted school records, "the Appeals Council should reverse and remand Mr. Cannon's case." Tr. 281.

Listing 12.05 covers the mental disorder now described as "Intellectual Disorder."[6] While Plaintiff is correct that an IQ score of 69, if valid, is relevant in assessing whether a

---

6 Effective September 2, 2013, the Social Security Administration replaced the term "mental

claimant meets the requirements of Listing 12.05(C), Plaintiff's argument gives short shrift to his predicate obligation to fully satisfy the introductory paragraph of Listing 12.05 before proceeding to consider whether he satisfies the criteria of subsection C. The introductory paragraph reads as follows: "Intellectual disability refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period, i.e., the evidence demonstrates or supports onset of the impairment before age 22." Although Plaintiff's IQ score, if credited as valid, creates a rebuttable presumption that he manifested deficits in adaptive functioning before the age of twenty-two, the IQ score alone does not satisfy the diagnostic criteria of the introductory paragraph if there is sufficient evidence in the record to rebut the presumption of deficits in adaptive functioning created by the IQ score. *See e.g., Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (citations omitted) ("Generally, a claimant meets the criteria for presumptive disability under section 12.05(C) when the claimant presents a valid I.Q. score of 60 to 70 inclusive, and evidence of an additional mental or physical impairment that has more than 'minimal effect' on the claimant's ability to perform basic work activities. This court, however, has recognized that a valid I.Q. score need not be conclusive of [intellectual disability] where the I.Q. score is inconsistent with other evidence in the record on the claimant's daily activities and behavior."). In particular, evidence of a claimant's activities of daily living can rebut the presumption created by an

---

retardation" with "intellectual disability" in the Listing of Impairments. The Agency now uses the term "intellectual disorder."

IQ score in the range identified by subsection C of the Listing. *Hodges v. Barnhart*, 276 F.3d 1265, 1269 (11th Cir. 2001).

Neither Listing 12.05 nor the Social Security Regulations provide a definition of precisely what is meant by "deficits in adaptive functioning." As articulated by Defendant, *see* Def.'s R. (Doc. 13) at 7, the Social Security Regulations describe "adaptive activities" as "cleaning, shopping, cooking, taking public transportation, paying bills, maintaining a residence, caring appropriately for your grooming and hygiene, using telephones and directories, and using a post office." 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.00C(1). Furthermore, the Social Security Administration's Program Operations Manual System ("POMS") imparts that adaptive functioning refers "to the individual's progress in acquiring mental, academic, social and personal skills as compared with other unimpaired individuals of his/her same age." Soc. Sec. Admin., POMS, DI 24515.056(D)(2) (2012). Likewise, the Diagnostic and Statistical Manual of Mental Disorders ("DSM") explains that adaptive functioning broadly "refer[s] to how well a person meets community standards of personal independence and social responsibility, in comparison to others of similar age and sociocultural background." American Psychological Association, *DSM-V*, p. 37. The Eleventh Circuit has favorably cited both definitions in applying Listing 12.05. *See, e.g., Schrader v. Acting Comm'r of the Soc. Sec. Admin.*, 632 F. App'x 572, 576 (11th Cir. 2015); *id.* at n.3.

The Commissioner points to evidence of Plaintiff's activities of daily living to rebut Plaintiff's argument that he meets Listing 12.05(C) due to his IQ score and purported

deficits in adaptive functioning. Def.'s Br. (Doc. 13) at 7-8. Indeed, the ALJ opined that

Plaintiff "perhaps [has] a mild restriction" in his activities of daily living. The ALJ found

as follows:

> The record shows that the claimant can take care of his personal needs
> without assistance. He does some household chores and yard work. He goes
> outside one or two times a day by riding in a car. He goes fishing, watches
> television, and listens to the radio. He goes outside daily or to places without
> having someone having to accompany him.

Tr. 25. As the ALJ recounted, there is substantial evidence in the record that Plaintiff is

able to function independently and responsibly in accord with community standards.

Although he was separated at the time of the hearing before the ALJ, Plaintiff was married.

Tr. 45. He visits with family members when he gets bored. Tr. 54. He works around the

house, including taking out the garbage, cleaning the floors, gathering dirty laundry, and

helping with grocery shopping. Tr. 55-56. He does yardwork for two hours at a time

without needing help or encouragement. Tr. 220. He needs no assistance with his personal

care, except that his mother reminds him when to take a bath. Tr. 219-20. He likes to go

fishing at least twice a month. Tr. 222. He does not prepare his own meals because he

does not "feel like it." Tr. 244. While Plaintiff does not have a driver's license, he

obviously is able to drive a car, as he has had "legal problems" stemming from drinking

and driving. Tr. 254. He does well following spoken instructions, and he gets along with

authority figures. Tr. 247-48. These activities and adaptive abilities are on par with the

daily activities of other claimants who have failed to show the requisite deficits in adaptive

functioning for purposes of Listing 12.05(C). *See, e.g., Prunty v. Acting Comm'r of Soc.*

*Sec. Admin.*, 635 F. App'x 757, 759 (11th Cir. 2015) (finding substantial evidence supported ALJ's decision that claimant lacked deficits in adaptive functioning where record established claimant's "abilities to cook simple meals, do household chores, drive a car by herself, take care of a dog, babysit children, and work part-time at McDonald's"); *Rodriguez v. Comm'r of Soc. Sec.*, 633 F. App'x 770, 773-74 (11th Cir. 2015) (finding that the claimant's activities of daily living, including doing household chores, grocery shopping, attending church, driving, and work history including jobs at the skilled and semi-skilled level provided substantial evidence to support the ALJ's determination that the claimant did not satisfy the diagnostic criteria of Listing 12.05(C)); *Schrader*, 632 F. App'x at 577 (finding substantial evidence supporting ALJ's decision regarding lack of deficits in adaptive functioning where, although claimant "attended special education classes, she graduated high school with a regular diploma," "was able to groom herself, cook simple meals, perform household chores, drive, watch television, and babysit her nephews without any assistance from others[,]" and she "worked part-time at the laundromat"); and *Hickel v. Comm'r of Soc. Sec.*, 239 F. App'x 980, 984 (11th Cir. 2013) (finding substantial evidence supported ALJ's decision that claimant lacked deficits in adaptive functioning where evidence showed that, although claimant participated in special education classes, "she is a high school graduate, she works part time at a nursery, she drives herself to work, she can prepare simple meals and dress and groom herself, she attends church regularly, and she socializes with friends").

To be sure, there is evidence in the record of Plaintiff's limitations with regard to his activities of daily living. But Plaintiff fails to point to any evidence in the record tending to show that the ALJ's finding that Plaintiff is only mildly impaired in such activities is erroneous. As evidence of Plaintiff's deficits in adaptive functioning, Plaintiff points only to the fact that he never obtained a driver's license, "exhibited marginal vocabulary," and—as found by the ALJ—has no past relevant work experience. However, none of these circumstances warrant a finding that Plaintiff suffers the requisite deficits in adaptive functioning for purposes of Listing 12.05(C). First, as discussed above, even without a license, Plaintiff is able to drive. Plaintiff points to no law or case holding that a deficit in adaptive functioning may be inferred from a claimant's failure to obtain a state-issued license to do an activity, especially where the claimant has demonstrated the ability to actually perform the activity unlicensed. Nor does Plaintiff point to any law or case holding that a claimant's narrow vocabulary is sufficient to find deficits in adaptive functioning. Plaintiff testified extensively before the ALJ. *See* Tr. 42-64. Even though his answers are often plain and his grammar is poor, it is evident that Plaintiff generally was able to understand the questions he was asked and respond appropriately. Finally, the fact that Plaintiff does not have past relevant work does not compel the conclusion that he has deficits in adaptive functioning. In fact, Plaintiff testified about two previous jobs he briefly held, and further indicated that, after leaving the second job, he stopped looking for work. Tr. 47-48.

In sum, while there is some evidence of Plaintiff's difficulties due to his mental impairment, as set forth above, there is undoubtedly sufficient evidence in the record showing that Plaintiff lacks the requisite deficits in adaptive functioning for purposes of Listing 12.05(C). As such, the Appeals Council's denial of review of the ALJ's decision, despite Plaintiff's submission of an education record reflecting an IQ score within the range implicated by Listing 12.05(C), was not contrary to the weight of the record and, hence, was not erroneous.

### 3. Records conflicting with Dr. Gam's opinion.

Plaintiff's final contention of error with respect to the Appeals Council's denial of review is that the school records submitted to the Council directly conflict with Dr. Gam's opinion that [Plaintiff] did 'not have a long history of mental slowness or mental retardation." Pl.'s Br. (Doc. 12) at 5. He argues that the school records show that his "intellectual deficiencies arose during the developmental period." *Id.*

Plaintiff saw Dr. Gam for a consultative mental examination. Tr. 285. Dr. Gam noted that Plaintiff "completed the 9th grade in 'special education'" classes, and further found that Plaintiff's "intellect appears borderline," his "ability for "simple calculations is marginal," and that he struggles with abstract thought and concepts. Tr. 286-87. Nevertheless, in the "Prognosis" section of the report, Dr. Gam remarks that Plaintiff "does not have a long history of mental slowness or mental retardation. However, due to his poor judgment he may not be able to function independently and manage financial benefits if

granted." Tr. 287. More importantly, Dr. Gam opined the following with regard to Plaintiff's mental functional capacity:

> Currently, from a mental standpoint, the claimant has no impairment in his ability to comprehend, carry out, and remember simple instructions. He has moderate impairment in his ability to comprehend, carry out, and remember complex instructions. He has moderate impairment in his ability to respond appropriately to supervision, coworkers, and work pressures in a work setting. He has no impairment in his ability to make simple work decisions. He may have marked impairment in his ability to make complex work decisions. He has moderate impairment in his ability to maintain concentration and pace for more than two hours. He has moderate impairment in his ability to change at work. He has mild impairment in his ability to manage his activities of daily living. He has mild impairment in his ability to function socially. His prognosis is guarded.

Tr. 288. Thus, notwithstanding Dr. Gam's remark about Plaintiff's perceived lack of a "long history of mental slowness or mental retardation," Dr. Gam plainly observed that Plaintiff suffers some mental impairment and therefore articulated a "guarded" opinion about Plaintiff's mental functioning in a workplace setting. In essence, Dr. Gam opined that Plaintiff has the ability to follow simple instructions and make simple work decisions. The ALJ recognized that "Dr. Gam's evaluation indicates that [Plaintiff] does have some cognitive deficits." Tr. 31. Ultimately, the ALJ gave "significant weight" to Dr. Gam's opinion, Tr. 33, and the RFC articulated by the ALJ is largely consistent with the opinion of Plaintiff's functional abilities given by Dr. Gam.

Plaintiff does not explain how the school records he submitted to the Appeals Council both "directly conflict with Dr. Gam's opinion" or, more significantly, render the Appeals Council's denial of review of the ALJ's decision erroneous. That is, Plaintiff does not explain how the records render Dr. Gam's ultimate opinion about Plaintiff's abilities—

the part of Dr. Gam's opinion that is significant in the ALJ's decision—unworthy of the weight afforded by the ALJ. Plaintiff proffers the records as demonstrating that Plaintiff's intellectual deficiencies arose during the developmental period." Pl.'s Br. (Doc. 12) at 5. But both Dr. Gam and the ALJ acknowledged that Plaintiff has cognitive deficits, and the ALJ found that Plaintiff has the severe impairment of borderline intellectual functioning. There does not appear to be any dispute about whether Plaintiff's impairment "arose during the developmental period." Furthermore, the records only reflect that 1) Plaintiff received special education services, and 2) he scored a 69 on an IQ test rendered in 1992. Importantly, Dr. Gam already noted in Plaintiff's "Social History" that Plaintiff attended special education classes. Tr. 286. Moreover, it is unclear why or how the IQ score noted in the records would or should have changed Dr. Gam's (or the ALJ's) opinion about Plaintiff's abilities. There is only a handwritten note indicating the score and the date of the test. There is no commentary that would assist any reviewer's assessment of the validity of the test results. To that point, Dr. Gam noted that, during his consultative examination, Plaintiff's "motivation is low," as well as "finding indications of malingering." Tr. 287. However, even if Dr. Gam were aware of the IQ score, and accepted it as valid, as discussed above, nothing in the mental abilities he opined of Plaintiff is inconsistent with that score. Thus, the court simply cannot conclude that the Appeals Council erred in denying review of the ALJ's decision on the basis of any supposed conflict between the school records submitted to the Council and the opinion of Dr. Gam.

**B.**    **The ALJ's treatment of "inconsistencies" in the record.**

Plaintiff's final claim of error is that the ALJ "fail[ed] to resolve inconsistencies in the administrative record with actual rationale prior to issuing his unfavorable decision." Pl.'s Br. (doc. 12) at 6. As examples, he mentions perceived internal inconsistencies in Dr. Gam's opinion, including that Dr. Gam "observed that [Plaintiff's] memory, concentration, and attention span appeared impaired" and that Dr. Gam opined that Plaintiff's poor judgment might limit his ability to "function independently and manage financial benefits if granted." *Id.* According to Plaintiff, these opinions are inconsistent with Dr. Gam's assessment that Plaintiff can "perform substantial gainful activity on a sustained basis." *Id.* at 7. Thus, he asserts, the ALJ should have resolved this inconsistency, especially considering that the ALJ afforded Dr. Gam's opinion significant weight. Furthermore, Plaintiff argues that the ALJ should have resolved the perceived conflict between Dr. Gam's opinion that Plaintiff may work and his treating source's observation that Plaintiff has "difficulty understanding simple concepts." *Id.* Plaintiff asserts that the ALJ's failure to reconcile these parts of the record violates "Marbury," and therefore warrants reversal and remand of this matter. *Id.*

Plaintiff's claim of a dispositive "Marbury" error is lacking in sufficient detail or development. Although he mentions a supposed "Marbury" error several times, the only time any actual *Marbury* opinion is cited is in a block quotation of the opinion of another judge of this court. *See* Def.'s Br. (Doc. 12) at 6-7 (quoting *Ellington v. Astrue*, No. 2:07-cv-789-CSC, 2008 WL 1805435, at *9 (M.D. Ala. April 18, 2008)). In any event, the Eleventh Circuit's holding in that case was simply that the ALJ should have obtained a

vocational expert's testimony about whether the claimant could perform jobs existing in the national economy because the ALJ found that the claimant could perform less than the full range of light work, and that the ALJ erred in evaluating the claimant's subjective testimony about pain where the record adequately established that the claimant's medical conditions could reasonably be expected to cause pain of the sort about which he complained. *Marbury v. Sullivan*, 957 F.2d 837, 840-41 (11th Cir. 1992). Nothing in the opinion appears directly on-point with the instant Plaintiff's argument that the ALJ failed to resolve purportedly internally inconsistent medical opinion with "actual rationale."

Nevertheless, the court does not find any inconsistency in the record evidence demanding a more exacting explication of his rationale than what was actually given by the ALJ. Dr. Gam simply observed that, due to Plaintiff's "poor judgment," "he *may* not be able to function independently and manage financial benefits if granted." Tr. 287 (emphasis supplied). Thus, Plaintiff mischaracterizes Dr. Gam's opinion when he says that Dr. Gam opined that Plaintiff "was not able to function independently[.]" Pl.'s Br. (Doc. 12) at 7. Plaintiff finds certainty where Dr. Gam clearly equivocated. Nevertheless, as discussed previously, Dr. Gam's opinion about Plaintiff's mental functional ability reflects his "guarded" prognosis of Plaintiff's ability to work even considering Plaintiff's "poor judgment." Dr. Gam found Plaintiff moderately impaired in his ability to "comprehend, carry out, and remember complex instructions," moderately impaired in his ability "to respond appropriately to supervision, coworkers, and work pressures," and markedly impaired in his ability to make "complex work decisions." Tr. 288. Thus, in view of his

concerns about Plaintiff's ability to "function independently" due to his "poor judgment," Dr. Gam opined that, essentially, Plaintiff should be limited to employment requiring him only to follow simple instructions and make simple work-related decisions. Plaintiff does not explain how this opinion is "internally inconsistent" with Dr. Gam's related observation that Plaintiff "may not be able to function independently."

Finally, even to the extent that Dr. Gam's opinion could be characterized as "internally inconsistent," the ALJ did articulate a rationale for his conclusion that Dr. Gam's concern about Plaintiff's independent functioning did not preclude his ability to perform substantial gainful activity. In his opinion, the ALJ noted Dr. Gam's statement, but further noted the functional limitations opined by Dr. Gam discussed previously and, more significantly, the VE's testimony that "Dr. Gam's statement would not allow the claimant to perform skilled or semiskilled work but would not preclude the ability to perform unskilled work." Tr. 33. Indeed, when queried about Dr. Gam's statement, the VE testified that the unskilled occupations he had described in response to the ALJ's hypotheticals would be acceptable for someone limited in their ability, or even unable, to function independently. Tr. 72. Hence, in relying upon the testimony of the vocational expert, the ALJ supported his reconciliation of any perceived internal inconsistency in Dr. Gam's opinion with sufficient "rationale."

The final point of contention raised by Plaintiff is that the ALJ "fail[ed] to recognize or provide rationale thereto regarding [Plaintiff's] treating mental health provider's observation that he demonstrated 'difficulty understanding simple concepts.'" Pl.'s Br.

(Doc. 12) at 7. This observation is set forth in a May 7, 2014, "Progress Note" authored by a counselor at East Alabama Mental Health Center. Tr. 319-20. As argued by Defendant, *see* Def.'s Br. (Doc. 13) at 12, a counselor is not an acceptable medical source under the governing regulations and, accordingly, the ALJ was justified in crediting the opinion of acceptable medical sources like Dr. Gam and Dr. Sims, who completed a "Mental Residual Functional Capacity Assessment." Both of these acceptable medical sources opined that Plaintiff is able to understand simple instructions and make simple decisions. *See* Tr. 89-91, 288. Although the ALJ did not explicitly mention the counselor's observation about Plaintiff's difficulty with understanding simple concepts, the ALJ plainly reviewed and considered the treatment note in which that observation was included. *See* Tr. 30 (discussing May 7, 2014, "Progress Note"). However, with respect to the counselor's observation, the ALJ simply credited the opinion of acceptable medical sources regarding Plaintiff's ability to understand simple instructions and make simple decisions. As set forth above, that decision is supported by substantial evidence. Accordingly, the ALJ did not reversibly err.

## VI.  CONCLUSION

For all of the reasons given above, the undersigned Magistrate Judge concludes that the decision of the Commissioner is AFFIRMED. A separate judgment will issue.

Done this 31st day of May, 2017.

/s/ Wallace Capel, Jr.
CHIEF UNITED STATES MAGISTRATE JUDGE

24